JEAN-PIERRE OLLIVIER et al., Plaintiffs-Appellants, v. JOHN ALDEN, SR., et al., Defendants-Appellees.

Second District    No. 2—93—0221

Opinion filed May 17, 1994.

192

Charles L. Ollivier, of Waukegan, for appellants.

Richard J. Biondi, of Wasneski, Biondi & Waldeck, of Waukegan, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiffs, Jean-Pierre, Anne and Charles Ollivier, appeal from an order of the circuit court of Lake County rejecting their claims of breach of contract, breach of the implied warranty of habitability and fraudulent misrepresentation against the defendants, John, Sr., John, Jr., and Ronald R. Alden, in connection with the sale by the defendants to the plaintiffs of real estate in Waukegan.

On November 14, 1984, the plaintiffs entered into a written contract to buy a 132-year-old residence at 321 N. Utica Street, Waukegan, from the defendants. The dwelling had been extensively renovated by the defendants and was being used as a four-unit rental apartment building. The defendants disclosed to the plaintiffs at the time the contract was written that the dwelling had leaks in the roof and basement. The following typewritten provisions were added to the printed-form real estate contract:

"(J) Sellers guarantee that the roof and basement shall be free of leaks and that all utilities shall be in good working order at the time of closing; this guarantee shall not survive the closing.

(K) Sellers shall install drain spouts and gutters prior to closing, and the same shall be in working order at the time of closing."

The closing was set for December 19, 1984. On November 29, 1984, Charles Ollivier, a coplaintiff and attorney for the plaintiffs throughout this matter, wrote a letter to the defendants' attorney in which he requested the following modifications:

"Para. 11 (J)—Warranty. I have no disagreement with a specific limitation on the warranty, but it must survive the closing as such defects may not be directly or immediately apparent. I anticipate no problems in those areas as the Aldens voluntarily disclosed the leaks in the basement and the roof and, of course, because of the care with which they built. If they say they are fixed, I believe them.

\* \* \*

I would like an additional condition, perhaps under para. 11(H): that at the time of closing there are no unresolved tenant complaints."

In response to Ollivier's letter, the defendants' attorney amended the guarantee contained in paragraph J to read:

"(J) Sellers guarantee that the roof and basement shall be free of leaks and that all utilities shall be in good working order at the time of closing; this guarantee shall not survive the closing *for a period longer than 6 months thereafter.*" (Emphasis added.)

Additionally, the defendants added the following line to paragraph H of the printed contract: "That there shall be no unresolved tenant complaints at the time of closing."

The sale was closed pursuant to the amended contract on December 20, 1984. Thereafter, the defendants attempted on at least four occasions to fix the leaks referred to in the contract, but they were unable to do so. In December 1985, the defendants refused to attempt any further repairs to the building. By 1986, paint which the defendants had applied to the original exterior peeled away, exposing some rotted wood. The plaintiffs also became aware of numerous other problems with the building.

The plaintiffs filed a two-count complaint against the defendants on December 21, 1990, alleging breach of the implied warranty of habitability and breach of contract. On June 7, 1991, the plaintiffs filed an amended complaint to add a count alleging fraudulent misrepresentation.

On April 7, 1992, the defendants filed a motion for summary judgment (735 ILCS 5/2—1005 (West 1992)) as to count I, breach of

the implied warranty of habitability, and count II, breach of contract, arguing that the four-year limit statute of limitations imposed by statute on all claims based on the construction of improvements to real property had expired. See Ill. Rev. Stat. 1991, ch. 110, par. 13—214(a) (now codified, as amended, at 735 ILCS 5/13—214(a) (West 1992)).

On April 30, 1992, the trial court granted the defendants' motion for summary judgment on counts I and II, denied the plaintiffs' motion to extend the time for discovery, and set a June 16, 1992, trial date on the remaining fraudulent misrepresentation count.

Following a further delay, a bench trial was conducted on August 26, 1992, after which the court found for the defendants. The plaintiffs filed a petition for a rule to show cause and vacate judgment on September 22, 1992. Following a hearing on December 15, 1992, the trial court denied the petition and determined that it was "frivolous and unfounded." On January 28, 1993, the trial court granted the defendants' motion for sanctions in the amount of $750.

On appeal, the plaintiffs make numerous allegations of error, several of which relate to matters of discovery and rulings by the trial court both before and after trial. The plaintiffs' primary claims are that the trial court erred by granting summary judgment as to counts I and II of their complaint and by determining after a bench trial that the defendants were not guilty of fraudulent misrepresentation. For the following reasons, we affirm the trial court's grant of summary judgment as to the implied warranty of habitability and its judgment on the fraud count. We reverse the grant of summary judgment as to one portion of the plaintiffs' breach of contract allegation, vacate the imposition of sanctions, and we remand for further proceedings consistent with this opinion.

Summary judgment is properly granted only if the pleadings, depositions, admissions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005 (West 1992)); *Neofotistos v. Metrick Electric Co.* (1991), 217 Ill. App. 3d 506, 507.) When considering whether a genuine fact issue exists, the trial court must view the evidence in the light most favorable to the nonmoving party. (*Neofotistos*, 217 Ill. App. 3d at 507.) On appeal, we have *de novo* review of a grant of summary judgment. *Town of Avon v. Geary* (1991), 223 Ill. App. 3d 294, 299.

## BREACH OF CONTRACT

■ The trial court erred when it determined that the plaintiffs' claims were barred by the four-year statute of limitations on claims

arising out of construction of improvements to real estate. (See Ill. Rev. Stat. 1991, ch. 110, par. 13—214(a) (now codified, as amended, at 735 ILCS 5/13—214(a) (West 1992)).) The renovation that the defendants undertook at the Utica Street property was not repairs or improvements contracted for by the plaintiffs. This case does not involve defective improvements or repairs; rather, it concerns the *sale* of real estate with an appurtenant structure. There is no factual basis of record to establish that the parties contracted for anything other than the *sale*, rather than the *repair* or *improvement*, of real property.

When the language of a contract is ambiguous, its meaning must be determined in an evidentiary hearing, and, thus, summary judgment is inappropriate. (*Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272.) Conversely, when the language of a contract is unambiguous, the intent of the parties at the time the agreement was entered into must be determined from the language used in the agreement itself, not from the construction placed upon it afterwards by the parties. (*Fitzwilliam v. 1220 Iroquois Venture* (1992), 233 Ill. App. 3d 221, 230.) An ambiguity is not created merely because the parties disagree as to the meaning of a contract clause. *People ex rel. Burris v. Memorial Consultants, Inc.* (1992), 224 Ill. App. 3d 653, 656.

Whether an ambiguity exists is a question of law for the trial judge, not a jury, to determine. (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 732.) Therefore, if a contract unambiguously demonstrates that there is no factual dispute, summary judgment is properly granted. (*Fitzwilliam*, 233 Ill. App. 3d at 237.) Express warranties contained within contracts are to be construed consistent with the clear and natural import of the language used. *Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 320-21.

■ In the absence of an express clause in a contract, the contract for the sale of real estate is "merged" into the deed when it is delivered to the buyer at closing, and the deed supersedes all of the contract provisions. (*Holec v. Heartland Builders, Inc.* (1992), 234 Ill. App. 3d 253, 255; see also *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31.) However, when an executory contract contains provisions that are collateral to and independent of the provisions of the subsequent deed, there is no merger, and the independent contract clauses survive the delivery of the deed. *Holec*, 234 Ill. App. 3d at 255.

■ In the present matter, paragraph H provided that "there would be no unresolved tenant complaints at the time of closing."

Paragraph K provided that the sellers would install drain spouts and gutters "prior to closing, and that the same shall be in working order at the time of closing." Thus, the language of these paragraphs was clear and unambiguous. The matters referred to in these paragraphs were to be resolved by the defendants prior to transferring the property to the buyers at closing. When the plaintiffs accepted the deed for the Utica Street property at closing, the contract merged into the deed and paragraphs H and K had no further effect. Thus, the plaintiffs may not base a breach of contract claim on matters arising under those merged paragraphs.

Only one express provision within the contract was collateral and, therefore, was not merged in the deed. That provision was contained in paragraph J, in which the seller guaranteed that the roof and basement would be free of leaks and that all utilities would be in good working order at the time of closing and for six months thereafter. Although the defendants tried repeatedly to fix the leaks, the problem persisted. The record does not indicate whether all of the utilities were in good working order at closing or for six months thereafter, although there appears in the record evidence of some faulty electrical work.

Clearly, the defendants breached paragraph J to some extent. Therefore, the plaintiffs were entitled to demonstrate what damages they suffered as a result of that breach. Accordingly, summary judgment in favor of the defendants was inappropriate as to the breach of paragraph J only.

■ In determining damages, it is fundamental that a monetary award should, to the extent possible, put the nonbreaching party in the position he would have been in had the contract been performed. (*Naiditch v. Shaf Home Builders, Inc.* (1987), 160 Ill. App. 3d 245, 267.) As the party seeking to recover, the plaintiff bears the burden of proving that he or she sustained damages resulting from the breach and establishing both the correct measurement of damages and the final computation of damages based on that measurement. (See *First National Bank v. Dusold* (1989), 180 Ill. App. 3d 714, 718; *First National Bank v. Shape Magnetronics, Inc.* (1985), 135 Ill. App. 3d 288, 293.) One measurement of damages often applied in breach of warranty cases is cost of repair. (*Dusold,* 180 Ill. App. 3d at 718; *Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1985), 134 Ill. App. 3d 402, 411.) However, a plaintiff is not entitled to a windfall. *Kalal v. Goldblatt Brothers, Inc.* (1977), 53 Ill. App. 3d 109, 112.

In the present matter, the plaintiffs were entitled by the clear language of paragraph J to a roof and basement free of leaks and

working utilities for a period of six months after closing. They must, therefore, demonstrate on remand that they suffered damages directly linked to those deficiencies that arose within the first six months after closing and not beyond. They are not entitled to the cost of permanent repair or replacement, but rather the loss of value for the first six months following the closing. See *Park v. Sohn* (1982), 89 Ill. 2d 453, 464-65.

## IMPLIED WARRANTY OF HABITABILITY

■ As an alternative theory of recovery, the plaintiffs claim that they were entitled to damages for a long list of alleged defects at the Utica Street property under the implied warranty of habitability, which is subject to a five-year statute of limitations. (*Cooper v. United Development Co.* (1984), 122 Ill. App. 3d 850, 858.) The limitation period begins to run when the plaintiff knew or should reasonably have known of an act or omission that could give rise to a claim. *Board of Library Directors v. Skidmore, Owings & Merrill* (1991), 215 Ill. App. 3d 69, 74-75.

The defendants claimed in their motion for summary judgment that the correct statute of limitations was four years, the statutory limitation placed on claims arising out of construction of improvements to real estate. As we have noted, that statute has no application here. Therefore, the trial court erred in basing its grant of summary judgment on the habitability claim on the running of the four-year statute of limitations. However, because we conclude that the warranty of habitability has no application in this case, that count was properly dismissed with prejudice.

The Illinois Supreme Court, in the landmark case of *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, created the warranty of habitability to protect persons who buy *new* homes directly from *builder-sellers* who discover *latent* defects in those homes. A latent defect is one which, in the circumstances of the case, could not have been discovered by the exercise of ordinary and reasonable care. *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 590.

The concepts of what constitutes a "new" home and who is a "builder-vendor" were expanded by our supreme court in *Park v. Sohn*. The warranty of habitability was found to apply in *Park*, although the defendant had built only one other home, and the defendant had lived in the home for about two years prior to selling it to the plaintiffs. In making that determination, our supreme court held that the question of whether a home is "new" for purposes of the implied warranty must be determined on a case-by-case basis. (*Park*,

89 Ill. 2d at 463.) The warranty of habitability does not apply to older homes sold by nonbuilders. *Sweetwood v. Mahoney* (1981), 93 Ill. App. 3d 788, 791.

We do not believe the warranty of habitability is applicable in this case. Although the defendants qualify as builder-sellers under the guidelines of *Park*, the Utica Street home was obviously not a new or nearly new home. Thus, the habitability warranty cannot be enlarged to include it. The inside of the dwelling was completely renovated, but the exterior was the original 132-year structure, albeit with a fresh coat of paint. The defendants did not promote or sell the home as new. It was uncontroverted that the plaintiffs were well aware of the home's age and that there were various problems with the structure.

The plaintiffs had ample time to investigate the renovation done by the defendants prior to buying the home. Testimony at trial by one of the codefendants indicated that coplaintiff Charles Ollivier toured the home with a carpenter prior to entering into a contract to buy the home. This testimony was not contradicted by anything appearing in the appellate record, though that record appears to be incomplete. The appellant has the responsibility to provide this court with a record of proceedings, and any doubts arising from an incomplete record will be decided against him. (*Gilmore v. City of Zion* (1992), 237 Ill. App. 3d 744, 754.) Thus, we take the codefendant's testimony as true.

## FRAUDULENT MISREPRESENTATION

■ The plaintiffs further claim that the trial court's rejection following a bench trial of their fraudulent misrepresentation claim was erroneous. We conclude that the trial court's determination that no fraud was proved was not against the manifest weight of the evidence.

As the finder of fact in a bench trial, a trial court's judgment will not be reversed on appeal unless it is against the manifest weight of the evidence. (*In re Estate of Marks* (1991), 211 Ill. App. 3d 53, 64.) To prove common-law fraud, the plaintiffs must prove that the defendants intentionally made a false statement of material fact, that the plaintiffs had a right to rely on that false statement, that the statement was made for the purpose of inducing reliance thereon, the plaintiffs in fact relied on the statement, and the plaintiff suffered injury as a direct result. (*Mitchell v. Skubiak* (1993), 248 Ill. App. 3d 1000, 1004-05.) *Scienter*, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud. *Park*, 89 Ill. 2d at 459.

The evidence at trial showed that while the defendants clearly did a less than workmanlike job on the renovation of the Utica Street property, they did not intentionally mislead the plaintiffs or falsely induce them into buying the property. In fact, the evidence demonstrated that the defendants were reluctant sellers who were pursued for some time by the plaintiffs before the defendants agreed to sell. As we have already noted, the plaintiffs were made aware of various flaws to the property and examined it on several occasions before buying the property. Just as the plaintiffs have not established that they reasonably believed they were buying a new home, they have not established that the defendants purposely defrauded them.

## DISCOVERY AND PROCEDURE

The plaintiffs make several allegations of error relating to matters of discovery and pretrial and post-trial procedure, none of which have merit.

■ The plaintiffs claim that because the defendants failed to respond to their request to admit prior to trial, the matters raised in that request must be taken as admitted by the defendants. The trial court declined to so rule. As the defendants correctly observe, this allegation was not included in the plaintiffs' written notice of appeal. Therefore, under Supreme Court Rule 303(c)(2) (134 Ill. 2d R. 303(c)(2)), we are without jurisdiction to consider it. *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 178; *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill. 2d 56, 61; *In re Marriage of Alush* (1988), 172 Ill. App. 3d 646, 652.

■ The defendants also correctly point out that the plaintiffs have waived two other contentions: that the trial court (1) erroneously permitted multiple hearings on summary judgement and (2) erroneously denied the plaintiffs' petition for rule to show cause and vacate judgment. Plaintiffs did not support these claims with citation to authority as required by Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). The violation of this rule results in a waiver of the allegations by the appellant. See *People v. Ramirez* (1983), 98 Ill. 2d 439, 472-73; *Beneficial Development Corp. v. City of Highland Park* (1992), 239 Ill. App. 3d 414, 422-23.

■ Next, we are convinced that the trial court acted within its discretion when, pursuant to Supreme Court Rule 201(c)(1) (134 Ill. 2d R. 201(c)(1)), it denied the plaintiffs' motion to extend time for discovery. The plaintiffs were granted several extensions and offer nothing on appeal to demonstrate that the trial court abused its discretion in refusing to grant further delays. See *Wilson v. Bell Fuels, Inc.* (1991), 214 Ill. App. 3d 868, 877.

■ Finally, we reverse and remand the trial court's imposition of sanctions against the plaintiffs pursuant to Supreme Court Rule 137. (134 Ill. 2d R. 137.) The court determined after a hearing that the plaintiffs' petition for a rule to show cause and to vacate judgment was "frivolous and unfounded, as without legal basis, and was unsupported by fact or law." In light of our determination that the trial court based its grant of summary judgment on an inapplicable statute of limitations, we vacate the order imposing sanctions and remand for further consideration by the trial court as to whether the sanctions, in light of this opinion, are still appropriate.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed in part, reversed in part and vacated in part, and the cause is remanded for further proceedings in accordance with this opinion.

Affirmed in part; reversed in part; vacated in part and remanded.

GEIGER and PECCARELLI, JJ., concur.