**McKOWAN LOWE & CO., LTD.,
et al., Plaintiffs,**

v.

**JASMINE, LTD., et al., Defendants.**

Civil No. 94–5522.

United States District Court,
D. New Jersey.

Aug. 29, 1997.

Mark Baumgarten, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, Roseland, NJ.

William DeSantis, Kenney & Kearney, Cherry Hill, NJ,

Brett L. Messinger, Wolf, Block, Schorr & Solis–Cohen, Camden, NJ.

Steven A. Miller, Sachnoff & Weaver, Chicago, IL.

Richard A. Roth, Littman, Krooks & Roth, New York City.

Joel W. Todd, Dolchin, Slotkin & Todd, Philadelphia, PA.

Thomas J. Hagner, Kenney & Kearney, Cherry Hill, NJ.

Johnathan L. Goldstein, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ.

Nancy A. Temple, Sidley & Austin, Chicago, IL.

Nicholas M. Kouletsis, Pepper, Hamilton & Scheetz, Cherry Hill, NJ.

Michael Behn, Futterman & Howard, Chicago, IL.

KUGLER, United States Magistrate Judge.

This matter presents the interesting question of whether the Private Securities Litigation Reform Act of 1995, P.L. 104–67, codified at 15 U.S.C. § 77a et seq. (The "Reform Act" or "Act") applies to certain defendants added to a case after the effective date of the Act. These new defendants, Arthur Anderson, L.L.P. ("Anderson") and McKowan Lowe & Co., Ltd., ("McKowan Lowe") claim that the Act applies to them and they are entitled to the stay of discovery found in section 21D(b)(3)(B), 15 U.S.C. § 78u–4(b)(3)(B):

> "In any private action arising under This chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss...."[1]

---

**1.** The parties agree that the exceptions found in this subsection, "particularized need ... to pre-

There is more at stake than a stay of discovery. The Act also has substantive elements that can be fairly said make it more difficult for plaintiff to prevail.

There are two lawsuits before the Court. The first was an action by McKowan Lowe against Jasmine, Ltd., Lujaco, Ltd., Irving Mangel, James Stewart and Jack Aezen, filed on November 3, 1994, and carried under docket number 94–5522. In that action, plaintiff alleges it was a buying agent for Jasmine, who in turn was an importer of women's footwear, handbags and other accessories manufactured in China. Plaintiff claims it entered into a repayment agreement with Lujaco in which Lujaco agreed to assume over $13 million in Jasmine's debt to McKowan Lowe. Mangel, Stewart and Aezen allegedly guaranteed Lujaco's debt.

The other case, the one at issue here, is a class action by Berger and others arising from the initial public offering of the stock of Jasmine in December, 1993. Anderson was retained to audit Jasmine's financial statement for the year ending September 30, 1993, and its report was attached to the prospectus. Anderson was also engaged to audit Jasmine's 1994 financial statement, but it was terminated before completion. Shortly thereafter, plaintiff alleges, and as a result thereof, Jasmine's stock was delisted by NASDAQ and its value declined considerably.

The class action case was originally filed in the United States District Court for the District of Illinois on November 17, 1995, and was transferred to the District of New Jersey on May 17, 1996, with a docket number of 96–2318. McKowan Lowe was added as a defendant on June 10, 1996, while Anderson was added on November 18, 1996, in a Second Amended Complaint. This Court consolidated both cases on August 14, 1996.

The issue arises here because the amendments to the Securities Law made by the Reform Act took effect on December 22, 1995. Defendants argue that since they were not sued until after December 22, 1995 (which is undisputed), they are entitled to its protections. Plaintiffs argue that the lawsuit was filed before the effective date of the Act. Further complicating the analysis is a "Tolling Agreement" ("Agreement") entered into by the Berger plaintiffs and Anderson. Plaintiffs contend this Agreement also deprives Anderson of the benefits of the Act. For the reasons that follow, the Court finds that the Act does not apply and denies defendants' application for a stay of discovery.

## THE TOLLING AGREEMENT

By letter of November 13, 1995, counsel for plaintiffs in the *Berger* matter wrote to Anderson informing them of his intent to file suit. However, "as a professional courtesy to Anderson, we are willing to enter into [a] tolling agreement. This will allow us to (a) file the complaint without naming Anderson and (b) discuss this matter thoroughly, without the pressure of a filing deadline."

Plaintiffs and Anderson entered into the agreement on November 17, 1995. It apparently extended until plaintiff let it expire on October 31, 1996. Plaintiffs contend that

> "The agreement was expressly designed to preserve the status quo and avoid the rush to the courthouse occasioned by the Reform Act." Def.B.P.4.

The so-called express design is not apparent from the document.

The Agreement provides in pertinent part that plaintiff would not file suit so long as the Agreement remained in effect. In exchange, Anderson agreed that the tolling period "shall not be considered in the calculation with respect to any assertion by Anderson of any time-related defense, including any applicable statute of limitations as a defense." Agreement ¶ 1. The Agreement defines "time-related defense" as:

> "all defenses, whether in law or in equity, based or partially based on the passage of time and including all statutes of limitations and statutes of repose as well as all time-related equi-

serve evidence or to prevent undue prejudice" do not apply and further agree there is a pending motion to dismiss.

table defenses, such as laches." Agreement ¶ 6(b)

Furthermore, there is a "Reservation of Rights" provision:

"Except as expressly provided herein regarding all time-related defenses, this Tolling Agreement shall not in any manner, directly or indirectly, modify, change or alter the respective rights . . . or defenses of the parties hereto and the parties expressly reserve all claims, rights and defenses they may have against each other." Agreement ¶ 5.

The Agreement is governed by and is to be construed according to Illinois Law. Agreement ¶ 7(A). A contract is ambiguous if it is capable of being understood in more sense than one. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill.2d, 440, 163 Ill.Dec. 510, 513, 581 N.E.2d 664, 667 (1991). However, an ambiguity is not created merely because the parties disagree as to the meaning of a contract clause. *Ollivier v. Alden*, 262 Ill.App.3d 190, 199 Ill.Dec. 579, 583, 634 N.E.2d 418, 422 (1994). Extrinsic evidence is inadmissable to determine the meaning of an unambiguous document, *Rakowski v. Lucente*, 104 Ill.2d 317, 84 Ill.Dec. 654, 472 N.E.2d 791, 794 (1984), unless it demonstrates that a reader with knowledge of the context of the contract will derive a different meaning from it than a reader without such knowledge. *F.D.I.C. v. W.R. Grace & Co.*, 877 F.2d 614, 621–622 (7th Cir.1989) *cert. denied* 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990) (interpreting Illinois law). Whether an ambiguity exists is a question of law for the court to determine. *Ollivier*, 199 Ill.Dec. 579, 634 N.E.2d at 422.

Plaintiffs claim they refrained from proceeding against Andersen prior to enactment of the Reform Act in reliance that the Agreement would protect all the rights that existed as of the date of the Agreement, ¶ 7, and that the Agreement "relates back commencement of the action to the date of the original complaint." ¶ 8. Neither assertion is supported by the plain and unambiguous provisions of the Agreement. Nowhere in the Agreement is there any mention of the Reform Act. This is puzzling in light of the history of the Act. The House of Representatives passed it on March 7, 1995, and the Senate passed an amended version on June 28, 1995. After conference committee consideration, the Senate adopted the conference report on December 5, 1995, and The House on December 6, 1995. The President vetoed the Act on December 19, 1995. But on December 20, 1995, The House overrode the veto, and The Senate followed with its override on December 22, 1995. 109 Stat. 765.

Clearly, the congressional and presidential consideration of the Reform Act was much in the news at the time this Agreement was negotiated, entered into and extended. If one purpose of the Agreement was to avoid the provisions of the Act, the Agreement could and should have so provided. After all, the plaintiffs proposed and drafted the agreement.

The cases relied upon by plaintiffs are not helpful to their argument. First, there was no real analysis of the tolling agreements at issue in those cases. Second, the tolling agreements seem to have explicitly provided a date the complaint was to be deemed filed. *In re JWP. Inc. Securities Litigation*, 928 F.Supp. 1239, 1248 (S.D.N.Y.1996) ("In September 1995 the AUSA plaintiffs and E & Y entered into a tolling agreement under which *AUSA v. E & Y* is deemed to have been filed on September 22, 1993); *Republic of the Philippines v. Westinghouse Electric*, 774 F.Supp. 1438, 1450 (D.N.J.1991) (". . . pursuant to tolling agreements signed by the parties, the complaint in this action is treated as if it was filed on December 1, 1987).

The only rights Anderson explicitly surrendered in the Agreement were "time-related defenses" during the tolling period. By definition these are "based on the passage of time." It can hardly be argued that the stay (and other) provisions of the Reform Act somehow depend on the "passage of time." Anderson explicitly reserves all other rights and defenses. Those would include the provisions of the Reform Act. Consequently, plaintiff's argument that the Agreement precludes Anderson from asserting the Reform Act must fail.

## THE REFORM ACT

■ Section 108 of the Act states:

"The amendments made by this title shall not affect or apply to any private action ... commenced or pending on the date of enactment of this Act." 109 Stat. 737, 758.

As previously noted, this statute was enacted with the December 22, 1995 Senate override of the President's veto. The precise issue here is what Congress intended by "commenced or pending on the date of enactment."

Plaintiffs argue that the action was commenced on November 16, 1995, with the filing of the complaint. The plain language of Fed. R. Civ. P. 3 supports this view:

"a civil action is commenced by filing a complaint with the court."

Relying on older cases regarding whether the addition of new defendants is timely under the applicable statute of limitations, Anderson claims that an action is commenced against a new defendant with the filing of the amended complaint adding that party. This argument has some appeal. After all, defendants do not control their appearance in a case. They are involuntary participants. However, the cases relied upon by defendants are not helpful. *Derdiarian v. Futterman Corp.*, 36 F.R.D. 192 (S.D.N.Y.1964), *Robinson v. Waterman Steamship Co.*, 7 F.R.D. 51 (D.N.J.1947), and *Gloster v. Pennsylvania Railroad Co*, 214 F.Supp. 207 (W.D.Pa.1963) were decided before the relation-back policy of F.R.Civ.P. 15(c) was adopted in 1966. That Rule altered the generally accepted rule that new parties, either plaintiff or defendant, could not be added to an action by amendment after the applicable limitations period expired. 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*; Civil 2d § 1498. The other case cited by defendants, *Longo v. Pennsylvania Electric Co.*, 618 F.Supp. 87 (W.D.Pa.1985), dealt with, and granted a motion to amend the complaint filed thirty days prior to the expiration of the statute of limitations.

The Court concludes that the Reform Act should be applied prospectively only. In the only cases decided thus far, the Courts found that certain provisions of the Act do not apply retroactively. *District 65 Retirement Trust For Members of the Bureau of Wholesale Sales Representatives v. Prudential Securities, Inc.*, 925 F.Supp. 1551, 1568–70 (N.D.Ga.1996) (the Rico amendments in the Reform Act are prospective only); *In re Prudential Sec. Inc. Ltd. Partner Lit.*, 930 F.Supp. 68, 79–81 (S.D.N.Y.1996) (same); *Edge Partners, L.P. v. Dockser*, 944 F.Supp. 438, 440–41 (D.Md.1996) (Reform Act does not apply where complaint dismissed with leave to amend and amended complaint was filed after the effective date of the Act); *Mathews v. Kidder Peabody*, 947 F.Supp. 180, 185–87 (W.D.Pa.1996) (Rico amendments in the Reform Act not retroactive).

Employing the retroactivity analysis of *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229(1994) yields the same result. Pursuant to *Landgraf*, the Court must first determine whether Congress has expressly prescribed the statutes reach. 511 U.S. at 280, 114 S.Ct. at 1505. Here, there is no clear congressional intent that the Reform Act be applied to cases pending when the Act passed. *Mathews*, 947 F.Supp. at 185–86.

Next, the Court must decide whether the Statute would have "retroactive effect," that is

"whether it would impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new dictates with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505.

Here, the Reform Act clearly affects the rights of the plaintiff class. There are new pleading standards, provisions for heightened sanctions, selection of a lead plaintiff, selection of counsel, new notice requirements, and the stay of discovery (and Rule 26 disclosures, *see Medhekar v. United States Dis-*

*trict Court,* 99 F.3d 325 (9th Cir.1996)) at issue here. These are significant changes in the law. Consequently, the Court will apply the "traditional" presumption that the Reform Act would not govern this case or these defendants.

Helpful also is the case of *Carvalho v. Doe,* 7 F.R.D. 469 (D.Haw.1947). There, plaintiff filed the complaint on November 15, 1945, under the Fair Labor Standards Act, but didn't make service on the defendant until May 28, 1947. In the interim, on May 14, 1947, the Portal–to–Portal Pay Act became effective, which would have prevented the commencement of an action after that date on the kinds of claims at issue. The Court, finding that "Rule 3 of the Federal Rules of Civil Procedure means what it says," 7 F.R.D. at 470, held that the action was "commenced" when suit was filed and thus the Portal–to–Portal Pay Act did not apply. *Id.*

This present case is less compelling. Whereas in *Carvalho,* the defendant had no notice of the lawsuit before that Act came into effect (because they hadn't been served), the defendant Anderson here had notice of the claims through the Tolling Agreement before passage of the Reform Act. Consequently, this Court holds that the word "commenced" in Section 108 of the Reform Act means the date the lawsuit was filed. Therefore, the Reform Act does not apply to this case and defendant's application for a stay pursuant to Section 21D(b)(3)(B), 15 U.S.C. § 78u–4(b)(3)(B) will be **denied.**