**SMFC FUNDING CORPORATION,**
Plaintiff,

v.

**UNITED FINANCIAL MORTGAGE CORPORATION, Defendant.**

No. 97 C 3257.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 13, 1998.

David E. Bennett, Chad A. Schiefelbein, Vedder, Price, Kaufman & Kammholz, Chicago, IL, Diann H. Kimm, Andrea V. Ramos, Tuttle & Taylor, Los Angeles, CA, for Plaintiff.

John Michael Riccione, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, Gene H. Hansen, Judge & James Ltd., Park Ridge, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff, SMFC Funding Corporation ("SMFC"), filed this action against Defendant, United Financial Mortgage Corporation ("United"), alleging, *inter alia*, that United breached its contract with SMFC by selling it a loan that was not "investment quality." SMFC now moves for summary judgment on Counts I (breach of contract) and III (breach of express indemnification) of its Amended Complaint. For the reasons set forth below, the Court grants SMFC's motion.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. SMFC is a Virginia based corporation which is engaged in the purchase and securitization of investment quality mortgage loans. United is an Illinois corporation which conducts much of its operations in the mortgage loan business.

SMFC executes the purchase of mortgage loans through a program known as the Mortgage Purchase Program ("MPP"). Included in the MPP is the Seller/Servicer Guide (the "Guide") adopted by SMFC to govern its relationship and transactions with sellers and servicers of investment quality mortgage loans. This Guide is the basic contract between SMFC and the Sellers and Servicers, and sets forth the terms, conditions and requirements which govern that relationship. SMFC alleges that the Guide is incorporated by reference in all Seller/Servicing Agreements entered into by SMFC.

On or about February 28, 1994, United and SMFC entered into a Sales/Servicing Agreement ("Agreement") under which United agreed to sell mortgage loans to SMFC. The Agreement between SMFC and United was subject to the conditions of the Guide, which was incorporated by reference and was part of the Agreement between the parties.

According to SMFC, one of the chief requirements of the Guide is that the mortgage loans sold to SMFC must be of "investment quality." Under the Guide, a mortgage loan is of investment quality,

only if there do not exist any circumstances or conditions with respect to the Mortgage Loan, the mortgaged premises or the borrower's credit standing that can be expected to cause private institutional investors to regard the loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or adversely affect the value or marketability of the Mortgage Loan.

The Guide further provides that a loan is of "investment quality,"

only if neither the borrower nor any person or entity involved in the loan transaction or documentation (including without limitation the Seller, any appraiser, broker,

third-party originator, credit reporting agency or any other provider of underwriting information) has made any false representation or failed to provide information that is true, complete and accurate in connection with the transaction, whether or not Seller was a party to or had knowledge of such misrepresentation or incorrect information.

The Guide further provides that, upon breach by the Seller of any requirement, representation or warranty included in the Guide, the Seller must, within 30 days of discovery of the breach or within 30 days of the notice of the breach by SMFC, completely cure the breach or repurchase the Mortgage Loan. The Guide also includes an indemnification clause which states, in sum, that the Seller of a Mortgage Loan agrees to indemnify and hold harmless SMFC from and against any and all claims, losses, damages, fines, penalties, forfeitures, legal fees, judgments and any other costs, fees and expenses relating to a breach by the Seller or its agent of any representation, warranty or obligation contained in or made pursuant to the Guide or the Agreement between the parties.

On or about March 28, 1995, United sold to SMFC the "Stulka Loan." SMFC insists that the Stulka Loan was sold under the terms and conditions set forth in the Agreement and the Guide. After the loan was purchased by SMFC, it went into default. United advised SMFC of deficiencies with respect to the loan origination and documentation. SMFC later learned that the Stulka Loan was wholly fraudulent from its inception.[1] Both parties currently agree that the Stulka Loan was not of investment quality.

After realizing that the Stulka Loan was not of investment quality—it had gone into default—SMFC made a written demand on United to repurchase the loan or indemnify SMFC against its losses. United refused to do either, thereby triggering the present lawsuit.

SMFC filed suit claiming losses of $122,-858.70 for the Stulka loan—a figure reached by calculating the unpaid principal balance (plus delinquent interest), and subtracting the proceeds received from the sale of the mortgaged property.[2] SMFC now seeks summary judgment against United for "breach of contract" and "breach of express indemnification."

## DISCUSSION

### I. Standards for Summary Judgment

Summary judgment is appropriate where the pleadings, answers to interrogatories, affidavits, and other materials show that there exists "no genuine issue as to any material fact" and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Only genuine disputes over "material facts" can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Material facts" are those that might affect the outcome of the suit under governing law. *Id.* A "genuine issue" exists only if there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505. When considering a motion for summary judgment, a court must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the non-movant. *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

In *Taracorp, Inc. v. NL Industries, Inc.*, 73 F.3d 738 (7th Cir.1996), the Seventh Circuit explained how summary judgment motions should be approached in a diversity contract case such as the one presently before the Court.

First, it is necessary to look to the plain language of the provision at issue. Reviewing Illinois law, this Court has noted that "[t]he starting point must be the contract itself. If the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over." . . . . If the plain language of the contract is ambiguous, then "the court must go on to

---

1. Apparently, the real estate agents simply found a buyer who was ready to leave the United States—for Poland—and paid her to use her name, social security number and other information to fraudulently obtain the loan.

2. According to SMFC, the building on which the loan was based was uninhabitable and not worth even half of what it was represented to be worth.

declare [the contract's] meaning.".... If the court finds that a contract is ambiguous and that extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide.... However, if the parties dispute the extrinsic evidence on an ambiguous contract, then a fact-finder must be called upon to determine the intent of the parties. *Id.* at 743 (citing *Lumpkin v. Envirodyne Indus.,* 933 F.2d 449, 456 (7th Cir.1991)).

## II. United's Breach of the Agreement with SMFC

] Illinois,[3] like most jurisdictions, requires that contracts be interpreted as a whole, in a way that gives effect to all terms, in the light of their ordinary and natural meanings. *LaSalle National Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140, 144 (7th Cir. 1996) (citations omitted). Furthermore, as described above, if the court finds that a contract is ambiguous and that extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide. *Taracorp, Inc.,* 73 F.3d at 743.

██] In the present case, the extrinsic evidence is largely undisputed. The primary issue in dispute is whether United had a contractual obligation to provide an investment quality loan to SMFC where SMFC, not United, was the underwriter for the Stulka Loan. United contends that the Agreement and the Guide presume that the Seller of the Mortgage Loan is also the Underwriter of the Mortgage Loan. Under those circumstances, United concedes that it makes sense for the Seller/Underwriter to be required to represent and warrant that the Mortgage Loan is of investment quality. United argues, however, that the Agreement and the Guide do not contemplate a situation such as the one here, where SMFC chooses to underwrite the Mortgage Loan itself. Given this alleged "ambiguity" in the Agreement/Guide, United contends that it would be "absurd" to suggest that it should be responsible for providing SMFC with investment quality loans when it never even did the underwriting.

Initially, the Court disagrees with United's contention that neither the Agreement nor the Guide contemplated a situation where someone other than the Seller underwrites a mortgage loan. This Court's reading of the Agreement/Guide includes—and certainly does not foreclose—circumstances under which either the Seller or SMFC underwrites the Mortgage Loan. United's interpretation of the Agreement/Guide relies exclusively upon Section 410 of the Guide which it claims "requires" that "[t]he Seller must underwrite each Mortgage Loan." But, United has only quoted half of the sentence. The full sentence reads, "The Seller must underwrite each Mortgage Loan using all customary documents necessary to qualify the Borrower for the Mortgage Loan." When read in context, this passage does not require that the Seller underwrite each and every Mortgage Loan, but simply sets forth specific requirements for those instances where the Seller *does* underwrite the Mortgage Loan.

United's interpretation of the Agreement/Guide becomes even more strained when the overall context of the business relationship between SMFC and United is understood. In essence, United is required to collect and verify information from the borrower prior to submitting the loan package to SMFC. (*See* Nilson Aff. at ¶ 5.) Upon receipt of the information from United, SMFC conducts a "routine review" of the material to confirm that certain information has been received, that the loan fits within the program parameters, and that SMFC wants to purchase the loan. (*Id.* at ¶ 6.) The Guide and SMFC's Underwriting Guidelines clearly articulate that "[SMFC] relies on the accuracy of the information submitted by the orginating lender when underwriting each loan package, therefore it is the Seller's responsibility to verify the accuracy of the information prior to submitting the loan to [SMFC]." (Underwriting Guidelines at 1–1; *see also* the Guide at Section 400.) In other words, SMFC would not make a call to the alleged employer of the borrower to verify his or her employment because of the representations that are already made by the Seller under the Guide. (Nilson Dep. at 43.) Under the

---

**3.** Both parties have applied Illinois law in their respective memorandums of law.

terms of the Agreement/Guide, this type of verification is the Seller's responsibility, and explains why the Seller is paid a premium by SMFC when it purchases the loan. (*Id.*)

When the Court considers the context of the parties' relationship, United's objection that it should not be responsible for loans it did not "underwrite" rings hollow. Undoubtedly, there is a risk of default for every mortgage that SMFC purchases. SMFC, however, has chosen to limit its risk by purchasing only investment quality loans. And, for a premium, SMFC has apparently shifted this risk to the Seller of the Mortgage Loans. As a matter of both contract interpretation and common sense, United—which was supposed to be in possession of all of the pertinent information relied upon by SMFC— should bear the risk when one of the loans purchased by SMFC is not investment quality.

■■■ After considering the Agreement/Guide in place between United and SMFC, this Court finds that the requirement that the Seller provide SMFC with "investment quality" loans applies no matter which party does the underwriting. Moreover, under the terms specified in the Guide, United is responsible for the false representations contained in the loan package "whether or not [it] was a party to or had knowledge of such misrepresentation or incorrect information." (The Guide at Section 400.) Accordingly, the Court finds that because the Stulka Loan was not "investment quality," United is liable to SMFC for breach of the Agreement/Guide. United is also liable to SMFC under the indemnification clause contained in Section 190 of the Guide.[4]

**4.** Although United disputes the amount of damages owed to SMFC under the indemnification clause, it does not contest the validity or applicability of the clause in the event of a breach of the Agreement/Guide.

**5.** A "credit bid" means that at the foreclosure sale, SMFC made a money "bid" which would be credited to the borrower (Stulka) against her mortgage. For example, a credit bid of $75,000 on a $100,000 mortgage would leave the borrower owing the lender $25,000. In exchange, the lender would receive title to the property and would have the right to resell it.

### III. *Damages Available to SMFC*

SMFC claims that it is owed damages of $122,858.70 for the Stulka Loan—a figure reached by calculating the unpaid principal balance on the loan ($112,349.45), plus accrued interest ($18,879.90), plus attorneys fees ($3,627.50), plus property taxes ($1,590.06), plus preservation of property ($559.86), plus "other disbursements" ($588.85), and subtracting various "credits" ($1,703.84) and the proceeds received from the sale of the mortgaged property ($13,033.08).

United disputes several components of SMFC's calculations. First, United points out that in order to take possession of the Stulka property, SMFC's "servicer" had to make a "credit bid" on it at a foreclosure sale.[5] SMFC's credit bid was $89,500. However, when SMFC attempted to sell the property, it only received $17,000. United claims that its liability should be reduced by SMFC's credit bid rather than the amount for which SMFC actually sold the property.

On its face, United's argument appears to have considerable merit. After all, why would SMFC make a credit bid for $72,500 more than the property was actually worth? Again, this issue requires some additional context. SMFC's credit bid was premised upon the servicer's customary practice of generating a bid based upon the original appraised value of the property ($125,000), less any known damages (approximately $20,000) and then bidding 85% of that resulting number ($89,500).[6] (Nilson Aff. at ¶ 8.) For purposes of making a credit bid in this instance, however, SMFC got stuck with the unreliable appraisal value provided by United. (*Id.* at ¶ 9.)

**6.** The inquisitive reader may wonder why an 85% value is used. SMFC explains that the reasoning behind the 85% value is to avoid a situation where SMFC could be accused of underbidding the property at the foreclosure sale, and thereby improperly inflating the deficiency amount charged to the borrower. In such a case, SMFC would be vulnerable to attack from the buyer that its bid was not made in good faith; hence the standard procedure for all credit bids.

██] Under Illinois law, damages recoverable under a breach of contract theory are based upon the mutual expectations of the parties. "The basic principle for the measurement of contract damages is that the injured party is entitled to recover an amount that will put him in as good a position as he would have been in had the contract been performed as agreed." *Collins v. Reynard*, 154 Ill.2d 48, 51, 180 Ill.Dec. 672, 607 N.E.2d 1185, 1186 (1992); *Ollivier v. Alden*, 262 Ill.App.3d 190, 196, 199 Ill.Dec. 579, 634 N.E.2d 418, 422 (2d Dist.1994) (in determining contract damages, "it is fundamental that a monetary award should, to the extent possible, put the nonbreaching party in the position he would have been in had the contract been performed"). "However, a plaintiff is not entitled to a windfall." *Id.* at 196, 199 Ill.Dec. 579, 634 N.E.2d at 423; *Gaiser v. Village of Skokie*, 271 Ill.App.3d 85, 95, 207 Ill.Dec. 749, 648 N.E.2d 205, 213 (1st Dist.1995) ("The general rule of contract damages is that the person who is injured is to be placed in the position he would have been in had the contract been performed, but not in a better position.").

██ With these damage principles in mind, the Court must ask what damages would put SMFC in the position that it would have been in had the contract been performed. This Court finds that the unpaid balance on the Stulka Loan minus the sale price of the property ($17,000), not the credit bid ($89,500), represents the damage actually suffered by SMFC. United has not explained—and the Court does not see—how using the actual sale price value for the property gives SMFC a "windfall." [7] All the credit bid did for SMFC was allow it to gain title to property that in reality was worth only $17,000. If anything, using the high credit bid value—based upon the untrustworthy appraisal value gathered by United—would give United, not SMFC, a windfall.

██] Finally, United argues that SMFC did not take all "reasonable steps" to mitigate its damages. In particular, United claims that SMFC should have attempted to recover the deficiency amount from the borrower. Under normal circumstances, this may have been a "reasonable step" to take. Here, however, the parties were both aware that the borrower was already in Poland. Thus, the likelihood of SMFC ever recovering any money from her would have been slim indeed—certainly not worth the legal expenses that would have been required.[8] Under the circumstances, this Court finds that SMFC acted perfectly reasonably by not attempting to seek a judgment against the borrower.

## CONCLUSION

For the foregoing reasons, the Court grants SMFC's motion for summary judgment in the amount of $122,858.70.[9]

7. United argues that SMFC's credit bid might have foreclosed the possibility that a third party could have purchased the property for any amount up to SMFC's credit bid. Yet, United's argument is mere speculation and it offers no evidence that there was another interested bidder involved.

8. In fact, United might well have objected to such expenses as "unreasonable" had they been expended.

9. The Court understands that there may be outstanding issues as to pre-judgment interest and attorneys fees. The parties are encouraged to resolve these issues on their own and report to the Court. *See* Local Rule 47(b).