2024 IL App (1st) 231143-U

FOURTH DIVISION
Order filed: January 18, 2024

No. 1-23-1143

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| EQUIPMENT LEASING GROUP OF AMERICA, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 L 7920 |
| | ) | |
| MCG CANE BAY, LLC, BOMA, L.C., and BMB | ) | |
| INVESTMENTS, LLC, | ) | Honorable |
| | ) | Jerry Esrig, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio III concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Lessor was not entitled to damages for lessee's breach of contract when the lessor profited more from the breach than it would have had the contract been fully performed, and lessor was also not entitled to damages for lost depreciation tax deductions because lessor is an LLC that does not pay income taxes and, therefore, does not claim tax deductions.

¶ 2    In this appeal from a breach-of-contract action concerning a commercial equipment lease, plaintiff-lessor Equipment Leasing Group of America, LLC ("ELGA"), appeals a final judgment in favor of defendant-lessee MCG Cane Bay, LLC ("MCG"), and defendants-guarantors BOMA,

L.C. ("BOMA"), and BMB Investments, LLC ("BMB" and, together with BOMA, "Guarantors"). ELGA contends that the circuit court erred in concluding that it was not entitled to damages for MCG's breach of a lease agreement on the grounds that ELGA had profited more from the breach than it would have from full performance of the contract and that ELGA was not entitled to damages for its alleged loss of a depreciation tax deduction for the leased equipment because ELGA is not a tax-paying entity. We affirm the circuit court's judgment.

¶ 3    On December 30, 2015, ELGA and MCG entered into a contract ("the Lease" or "Lease 1") providing that ELGA would purchase certain equipment to be leased by MCG for five years and installed at MCG's planned assisted living facility in Cane Bay, South Carolina. The parties also entered into a second lease agreement ("Lease 2") that ELGA later assigned to Lakeside Bank. Only Lease 1 is at issue in this appeal. Concurrently with the signing of Lease 1, the Guarantors executed guarantees in favor of ELGA, guaranteeing MCG's obligations under the Lease. Around the same time, MCG also signed a "Pre-Delivery Certificate" stating that MCG "desires to commence the Lease prior to the complete delivery and installation of all the equipment" and that, in order to induce ELGA to begin making payments to the equipment vendors, MCG "hereby certifies that the portion of the Equipment that has already been delivered to [MCG], if any, is fully installed, working properly and irrevocably accepted by [MCG]."

¶ 4    In July 2017, MCG decided that it would no longer move forward with its Cane Bay project and ceased making payments on both leases. By that time, MCG had made monthly payments totaling $112,635.27 toward Lease 1 and ELGA had made down payments to equipment vendors totaling $90,623.43 under the Lease. Following MCG's default on Lease 1, ELGA elected not to

complete the purchase of the equipment that it was to deliver to MCG, and it instead recovered $55,889.50 of its deposits to the equipment vendors.

¶ 5    On August 5, 2021, ELGA filed suit against MCG and the Guarantors for breach of contract seeking approximately $265k in damages for Lease 1 and approximately $351k in damages for Lease 2. The defendants collectively answered the complaint and raised affirmative defenses, and the parties filed cross-motions for summary judgment. In its motion for summary judgment, MCG asserted that the leases were unenforceable, that ELGA was not entitled to any damages arising from Lease 2, in which ELGA no longer had any interest after assigning it to Lakeside Bank, and that ELGA was also not entitled to damages for any lost depreciation tax deductions that it anticipated receiving for the equipment that it was to purchase for MCG. For its part, ELGA sought partial summary judgment on the issue of whether MCG had breached Lease 1.

¶ 6    Following a hearing, the circuit court granted ELGA's motion for partial summary judgment, ruling that MCG breached Lease 1 by failing to make required payments. The court also granted MCG's motion in part, ruling that ELGA's claims relating to Lease 2 were extinguished by its assignment of that lease to Lakeside Bank and that ELGA was not entitled to damages for lost depreciation because ELGA is not a taxable entity and that any such damage would only be inflicted on its tax-paying member, LBBB, LLC ("LBBB"), which was neither a party to Lease 1 nor a third-party beneficiary. The court denied the portion of MCG's motion relating to the enforceability of Lease 1, finding the Lease valid and enforceable. The court's oral rulings were memorialized in a written order dated April 25, 2023.

¶ 7    The court then held a three-day trial on the issue of damages for MCG's breach of Lease 1. Based on the testimony of its expert witness, ELGA sought damages totaling $482,578.16 for the

gross amount that it was to receive under the Lease, legal fees, late fees, default interest, processing fees, inspection fees, accounting fees, and the residual value of the equipment to be leased. According to ELGA, those damages were all authorized by the terms of the Lease, which, in relevant part, provided that, in the event of a default by MCG, ELGA could sue for and recover all unpaid lease payments, all accelerated future payments due, all costs of enforcement and collection, and the residual value of the equipment. MCG's expert testified that, had the Lease been fully performed by both parties, ELGA would have received a total of $236,003 in lease payments and residual equipment value and would have expended $181,247 to acquire the equipment for MCG, for a net profit of $54,756. According to MCG's expert, that expected profit was less than ELGA's actual profit following MCG's breach, which totaled $77,898 when subtracting ELGA's net post-refund outlay to vendors from MCG's lease payments at the time of breach.

¶ 8    At the conclusion of trial, the court found that ELGA was not entitled to damages because it had realized more profit following MCG's breach than it would have had the parties fully performed the Lease. The court found MCG's expert's analysis to be "theoretically sound, supported by the evidence, persuasive, and *** consistent with the law." According to the court, the only element missing from MCG's analysis of ELGA's damages was the cost of recovering ELGA's deposits to vendors, but the court found that to be a consequence of ELGA's own failure of proof, with the court noting that ELGA "produced no evidence as to what actual efforts were required, no evidence of actual or even estimated costs, and there was nothing to suggest that the cost of those efforts would have reduced the actual profits made by [ELGA] below those it expected to make had both sides faithfully performed." Additionally, the court found that ELGA's

evidence of its costs to prosecute the present suit was insufficient to prove that the costs were reasonable. Further, the court affirmatively found that the fees that ELGA incurred prosecuting the suit were in fact unreasonable because, as a matter of law, it was not entitled to "windfall" damages in excess of what it would have received had the contract been fully performed and, therefore, had no meritorious claim for damages to pursue. Accordingly, the court denied ELGA's request for damages in its entirety and entered judgment in favor of MCG and the Guarantors. This appeal follows.

¶ 9     ELGA raises two issues in this appeal. It first contends that it should have been awarded damages for MCG's breach of Lease 1 because the specific types of damages that it requested were all authorized by the terms of the Lease. ELGA also asserts that it was entitled to damages for lost depreciation because the depreciation deduction was an expected benefit of the transaction. We see no merit to either argument.

¶ 10     ELGA's first issue contests the circuit court's ruling on ELGA's entitlement to damages. We review such a ruling to determine whether it is against the manifest weight of the evidence. *1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 13. To overturn a court's ruling on damages, "a reviewing court must find that the trial judge either ignored the evidence or that its measure of damages was erroneous as a matter of law." *Id.* (citing *MBC, Inc. v. Space Center Minnesota, Inc.*, 177 Ill. App. 3d 226, 234 (1988)). "An award of damages is not against the manifest weight or manifestly erroneous if there is an adequate basis in the record to support the trial court's determination of damages." *Id.* (citing *Schatz v. Abbott Laboratories, Inc.*, 51 Ill. 2d 143, 147 (1972); *Aetna Insurance Co. v. Amelio Brothers Meat Co.*, 182 Ill. App. 3d 863, 865 (1989)).

¶ 11 The circuit court found that MCG had proven that ELGA had realized more profit following MCG's breach than it would have had the parties fully performed the contract and that, as a consequence, ELGA was not entitled to damages. ELGA does not contest the court's findings regarding its actual and expected profits, but rather argues that "recovery of the amounts owed under Lease 1, which amounts included future rent to become due, the estimated residual value of the equipment leased by [MCG], late fees and costs of enforcement, including professional fees incurred in enforcing Lease 1" were nonetheless authorized by the terms of the Lease. According to ELGA, it does not matter that it profited more from the breach than it would have from performance of the contract. In its view, the terms of the lease, which were agreed to by commercially sophisticated parties, allowed the damages that it sought, and that is all that matters. But ELGA's argument is contrary to the law.

¶ 12 "Damages recoverable under a breach of contract theory are based upon the mutual expectations of the parties. The basic principle for the measurement of contract damages is that the injured party is entitled to recover an amount that will put him in as good a position as he would have been in had the contract been performed as agreed." *Collins v. Reynard*, 154 Ill. 2d 48, 51 (1992). "However, a plaintiff is not entitled to a windfall." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196 (1994); see also *Gaiser v. Village of Skokie*, 271 Ill. App. 3d 85, 95 (1995) ("The general rule of contract damages is that the person who is injured is to be placed in the position he would have been in had the contract been performed, *but not in a better position*." (Emphasis added.)). Rather, a non-breaching party is "entitled to contract damages in an amount equivalent to the difference between the benefits it actually received and those to which it was due under the Agreement—*but*

*no more*." (Emphasis added.) *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 78 F.3d 266, 278 (7th Cir. 1996) (applying Illinois law).

¶ 13    Under this established rule, ELGA is not entitled to damages because it profited more from the breach than it would have from performance of the contract. Nonetheless, ELGA argues that sections 2A-503 and 2A-504 of the Uniform Commercial Code (UCC) (810 ILCS 5/2A-503, 2A-504 (West 2014)) allow parties the freedom to contract and the freedom to set their own damages formula and that the circuit court, therefore, should have applied the formula provided in the Lease and granted ELGA the damages that it requested. It may be true that the UCC allows parties to set their own damages formula, but that formula only applies when a party has actually been damaged. It is inapplicable when the non-breaching party has not been damaged by, and rather has benefited from, the other party's breach. See *Ollivier*, 262 Ill. App. 3d at 196; *Roboserve*, 78 F.3d at 278. As the circuit court observed in its oral ruling, had ELGA suffered an actual economic loss as a result of the breach, the damages formula provided for in the Lease would have been applied and ELGA would have been entitled to "an amount equivalent to the difference between the benefits it actually received and those to which it was due" under the Lease. *Roboserve*, 78 F.3d at 278. But because ELGA profited more from the breach than it would have had the contract been fully performed, Illinois law makes clear that it is not entitled to damages. It simply has not been economically harmed by the breach. Accordingly, the circuit court's judgment in favor of MCG and the Guarantors was not against the manifest weight of the evidence or contrary to the law.

¶ 14    In its second issue, ELGA challenges the circuit court's summary judgment ruling that it was not entitled to damages for alleged lost depreciation tax benefits because it is not a tax-paying entity and, therefore, suffered no harm from any alleged lost ability to claim tax deductions for the

depreciation of the equipment that it was to purchase for MCG. We again agree with the circuit court's view of the issue.

¶ 15    As an initial matter, MCG asserts that we do not have jurisdiction to review the circuit court's ruling on this matter because ELGA's notice of appeal lists the May 25, 2023, final judgment as the only order being appealed. However, "[a] notice of appeal is deemed to include an unspecified interlocutory order if that order was a step in the procedural progression leading to the judgment specified in the notice of appeal." *CitiMortgage, Inc. v. Hoeft*, 2015 IL App (1st) 150459, ¶ 8 (citing *Themas v. Green's Tap, Inc.,* 2014 IL App (2d) 140023, ¶ 6). "If an order not listed in the notice of appeal was a step in the procedural progression, it may be reviewed because it can be said to relate to the judgment specified in the notice of appeal." *Id.* (citing *Neiman v. Economy Preferred Insurance Co.*, 357 Ill. App. 3d 786, 790–91 (2005)). We view the court's summary judgment ruling regarding ELGA's entitlement to damages for lost depreciation as such a step in the procedural progression leading to the court's final post-trial ruling that ELGA was not entitled to any damages. They were both related decisions regarding what damages, if any, ELGA was entitled to. Therefore, we have jurisdiction to review the April 24, 2023, order on MCG's motion for summary judgment.

¶ 16    "Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citations.] The standard of review for the entry of summary judgment is *de novo*. [Citation.]" *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002).

¶ 17    ELGA asserted below that, had the Lease been fully performed, it would have been able to claim an income tax deduction for depreciation of the equipment that it was to purchase for MCG. ELGA claims that when MCG defaulted on the Lease it lost that depreciation deduction and was, therefore, entitled to damages as compensation. The circuit court disagreed and found that ELGA was not actually harmed in that manner because it is an LLC that does not pay any taxes and, therefore, does not benefit from tax deductions. Accordingly, the court found that ELGA was not entitled to damages for losing that future deduction.

¶ 18    On appeal, ELGA argues that it was entitled to damages for the lost deduction because depreciation deductions are a foundational element of the equipment-leasing industry and the deduction for its tax-paying member, LBBB, was a key expected benefit of the transaction. ELGA also asserts that the court should have allowed it to add LBBB as a party to establish LBBB's standing as a third-party beneficiary. ELGA's position is without merit.

¶ 19    "In order to establish a claim for breach of contract, a plaintiff must allege and prove the following elements: '(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury *to the plaintiff*.' " (Emphasis added.) *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 2016 IL App (2d) 151053, ¶ 14 (quoting *Henderson–Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.,* 323 Ill. App. 3d 15, 27 (2001)). There is no dispute that the claimed injury here was not "to the plaintiff" ELGA, which does not pay income taxes and, therefore, cannot benefit from a tax deduction. Rather, ELGA claims that its tax-paying member, LBBB, was harmed. However, LBBB was not a party to the Lease, and "[o]nly third parties who are direct beneficiaries have rights under a contract." *155 Harbor Drive Condominium Ass'n v. Harbor Point*

*Inc.*, 209 Ill. App. 3d 631, 646 (1991). "It is not enough that the third party will only reap incidental benefits from the contract." *Id.* (citing *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 177 (1989)). " 'The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract." *Id.* (quoting *Wheeling Trust & Savings Bank v. Tremco, Inc.*, 153 Ill. App. 3d 136, 140 (1987)). "A third party is a direct beneficiary when the contracting parties have manifested an intent to confer a benefit upon the third party." *Id.* (citing *Ball Corp.*, 187 Ill. App. 3d at 177).

¶ 20 ELGA does not point to any provision of Lease 1 manifesting an intent to confer any sort of benefit on LBBB. It instead points to Lease 2, which allegedly does specifically mention expected tax benefits for ELGA, as evidence that tax benefits were likewise an intended benefit of Lease 1. But we cannot look outside of the four corners of the contract at issue unless the terms of the contract are ambiguous. See *Pappas v. Waldron*, 323 Ill. App. 3d 330, 337–38 (2001). And ELGA has not presented any argument that terms of Lease 1 are ambiguous on this issue. Within the confines of the four corners of Lease 1, ELGA does not identify any provision conferring a benefit on LBBB. As a result, LBBB is not a third-party beneficiary and has no standing to claim damages from MCG's breach of Lease 1. Only ELGA has standing to assert such a claim. And without any harm to ELGA as it relates to expected tax benefits, we find no error in the circuit court's ruling on MCG's motion for summary judgment.

¶ 21 For the foregoing reasons, we affirm the judgment of the circuit court in favor of MCG and the Guarantors.

¶ 22 Affirmed.