# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**1472 N. Milwaukee, Ltd. v. Feinerman**, 2013 IL App (1st) 121191

---

| | |
|---|---|
| Appellate Court Caption | 1472 N. MILWAUKEE, LTD., and DAVID J. GINOPLE, Plaintiffs-Appellees, v. LYLE FEINERMAN, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-12-1191 |
| Filed | August 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for damages arising from defendant's breach of a real estate contract, the trial court's award of general damages based on the difference between the contract price and the price for which plaintiffs ultimately sold the property and the "carrying costs" for mortgage interest and real estate taxes incurred between the failed sale and the ultimate successful sale was upheld on appeal, notwithstanding defendant's contentions that the ultimate sale was fraudulent because the property was sold to a company in which plaintiffs' former real estate broker had an interest and the award was unreasonable, since the trial court properly considered the evidence, the award was not erroneous as a matter law, and defendant did not show that the trial court's findings were against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-03225; the Hon. Joan E. Powell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Karlin Eide LLP, of Chicago (Lawrence M. Karlin, of counsel), for appellant.

Robert Habib, of Chicago, for appellees.

Panel

JUSTICE PIERCE delivered the judgment of the court, with opinion.

Presiding Justice Neville and Justice Hyman concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Lyle Feinerman (Feinerman), appeals from the judgment of the circuit court of Cook County awarding plaintiffs, 1472 N. Milwaukee, Ltd., and David J. Ginople, damages for breach of a real estate sales contract. Following a bench trial, the trial court awarded plaintiffs $212,964.40 in damages that was later reduced to $194,125.44. Feinerman appeals the judgment awarding plaintiffs general damages and consequential damages comprised of "carrying costs" for mortgage interest expense and real estate taxes incurred during the period between the failed closing and the later resale of the real estate. Defendant's appeal takes issue with the sufficiency of the evidence submitted by plaintiffs to establish direct and consequential damages. For the reasons that follow, we affirm the judgment of the trial court.

¶ 2                          BACKGROUND

¶ 3    The following facts were established at trial. Plaintiff David J. Ginople was the sole shareholder of 1472 N. Milwaukee, Ltd. (1472 Ltd.), the owner of record of a commercial building located at 1472 N. Milwaukee Avenue in Chicago, Illinois. Ginople owned and operated a clothing resale business on the first-floor commercial space of the property. On July 27, 2006, Ginople entered into an exclusive listing agreement with real estate broker Claudia Langman authorizing Langman to list the real estate for sale at a price of $995,000. Ginople's listing agreement provided that Langman would market the property with the disclosure that Ginople wanted to either lease or buy back the first-floor commercial space.

¶ 4    On September 27, 2006, defendant Feinerman entered into a written contract for the purchase of the real estate at an agreed contract price of $1,200,000. The closing date set forth in the contract was November 17, 2006. A rider attached to the contract provided for 1472 Ltd. to lease back the first-floor commercial space at a specified rental rate from the closing date until February 15, 2007, allowing Ginople to move his inventory to another location. Feinerman failed to appear for closing on the agreed date, and again failed to appear

at a later agreed-upon closing date, December 8, 2006.

¶ 5 In January 2007, the property was relisted for sale for $1.2 million. That same month, Ginople signed a sales contract for $1,145,500 which did not close because the parties could not agree on certain insurance indemnification issues. Another potential sale in March 2007 for $1,000,500 failed because the potential purchasers wanted 120 days to close. Finally, on May 23, 2007, plaintiffs agreed to sell the building to 1472 Partners, Ltd., a company partially owned by the plaintiffs' former real estate broker, for $911,500. The sale closed on July 30, 2007, eight months after the first Feinerman failed closing.

¶ 6 On March 17, 2009, plaintiffs filed this action in the circuit court of Cook County for breach of real estate sales contract. At trial, defendant conceded liability on the breach of contract claim; however, he contested plaintiffs' claim for damages. After presiding over a trial marked by repeated and prolonged interruptions by counsel for both parties and repetitive, redundant and oftentimes confusing positions advanced by the attorneys, the trial court awarded damages in favor of plaintiffs consisting of general damages amounting to the difference in sales price between defendant 's agreed purchase price of $1.2 million and the July 2007 sale price of $911,500. The court reduced this award by $60,000, which was the commission that would have been paid by plaintiffs on the failed Feinerman contract (and not due on the later sale), and a further reduction of $25,768 was made representing the amount of rent plaintiffs would have paid under the failed contract from November 2006 to the closing date of the later sale, July 30, 2007.[1]

¶ 7 With respect to the award of consequential damages, the court awarded plaintiffs $10,000 for interest paid on a mortgage during the "carry period" (the period of time between the date of the breach and the later sale). The court also awarded consequential damages of $1,100 in attorney fees incurred due to the failed closing and $675 paid by plaintiffs for a land survey, neither amount is contested on appeal. As the court was about to award damages for real estate taxes incurred during the carry period, counsel once again engaged in argument and contentious commentary prompting the court to continue the matter to allow for the submission of additional information on that issue.

¶ 8 After the court considered posttrial submissions, the court made an award of $23,457.40 in consequential damages for real estate taxes incurred by plaintiffs during the carry period.

¶ 9 The defendant filed a timely motion for reconsideration contesting the entire general damage award and that part of the consequential damage award that related to mortgage interest and real estate taxes during the carry period. Defendant raised three arguments. First, defendant argued that the court erred in awarding general damages in the sum of $202,732 (net of reductions discussed above) because the court applied an incorrect measure of damages. Second, the defendant argued the court erred in awarding plaintiffs $23,507.40 for

---

[1]The Feinerman contract provided that 1472 Ltd. would occupy the commercial space from the closing date thru February 15, 2007, at a fixed rental rate of $22 per square foot. The trial court gave defendant a rental credit through July 30, 2007, over plaintiffs' objection. Plaintiffs did not cross-appeal. The court also ordered the $25,000 earnest money deposit to be distributed to plaintiffs resulting in a further reduction in the general damage award.

real estate taxes incurred during the carry period because: (1) the damages had never been disclosed or itemized prior to trial; (2) plaintiffs rested their case without presenting any competent evidence as to the amount of taxes paid; and (3) plaintiffs' posttrial calculations submitted to the court were incorrect and not supported by the trial evidence. Lastly, defendant argued that the court erred in awarding mortgage interest paid during the carry period because the only testimony submitted as to the mortgage interest paid was through the testimony of Mr. Ginople, which was refreshed after he was shown an unauthenticated document, rendering the testimony unreliable.

¶ 10     After a hearing, the trial court denied the motion for reconsideration as to the general damages award and the consequential damages for mortgage interest paid. However, the court granted the motion as to the real estate taxes finding that it relied on improper evidence submitted in the posttrial proceedings. Based on the trial testimony and exhibits, the court reduced the real estate tax award from $23,457.40 to $4,618. As a result of the ruling on the motion for reconsideration, the trial court issued a revised final judgment of $194,125.44. Defendant timely filed his notice of appeal on April 18, 2012.

¶ 11                                            ANALYSIS

¶ 12     The defendant raises two arguments on appeal. First, defendant contends that the trial court erred in awarding general damages to the plaintiffs, based on the difference between the Feinerman contract price and the price the property sold for approximately eight months later. Second, defendant argues that the trial court erred in awarding plaintiffs consequential damages for mortgage interest expenses and real estate taxes paid by plaintiffs between the date of the breach and the date of resale.

¶ 13     Where an award of damages is made after a bench trial, the standard of review is whether the trial court's judgment is against the manifest weight of the evidence. *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 859 (2008). A judgment is against the manifest weight of the evidence only if the opposite conclusion is clear or where the trial court's findings appear to be unreasonable, arbitrary, or not based on evidence. *Id.* "[A] reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the trier of fact." *In re Application of the County Treasurer*, 131 Ill. 2d 541, 549 (1989). However, in overturning a damage award, a reviewing court must find that the trial judge either ignored the evidence or that its measure of damages was erroneous as a matter of law. *MBC, Inc. v. Space Center Minnesota, Inc.*, 177 Ill. App. 3d 226, 234 (1988). Stated differently, a factual finding is against the manifest weight of the evidence when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). An award of damages is not against the manifest weight or manifestly erroneous if there is an adequate basis in the record to support the trial court's determination of damages. *Schatz v. Abbott Laboratories, Inc.*, 51 Ill. 2d 143, 147 (1972); *Aetna Insurance Co. v. Amelio Brothers Meat Co.*, 182 Ill. App. 3d 863, 865 (1989). We affirm the trial court's damage award and find that it is not contrary to the manifest weight of the evidence.

I. General Damages

¶ 15    Defendant argues the trial court's award of general damages was against the manifest weight of the evidence because plaintiffs failed to carry their burden with regard to both the quality and quantity of evidence to prove fair market value of the real estate on the date of the breach. Specifically, defendant argues: (1) plaintiffs failed to offer evidence of fair market value on the date of the breach; (2) although a resale price may be considered as evidence of fair market value on the date of the breach, the resale must be under circumstances comparable to the original transaction; and (3) the resale to 1472 Partners (Langman) was presumptively fraudulent because it was a sale between a client and a fiduciary and, therefore, the resale price should not have been considered competent evidence of fair market value.

¶ 16    It is well settled in Illinois that the measure of damages in an action for breach of a land sale contract is the difference between the contract price and the fair market value of the land on the date of the breach. *Dady v. Condit*, 188 Ill. 234, 238 (1900). Fair market value of land is defined as the price for which property would sell under ordinary circumstances, assuming that the seller is willing to sell and the buyer is under no compulsion to buy. *Department of Public Works & Buildings v. Oberlaender*, 42 Ill. 2d 410, 415 (1969). "The purchase price for land set in the course of an arm's length transaction, if not proved to be forced or fraudulent, is evidence of the highest rank to determine the true value of property." *Bachewicz v. American National Bank & Trust Co.*, 126 Ill. App. 3d 298, 309 (1984). "Resale price, if within a reasonable time and at the highest price obtainable after the breach, is some evidence of market value on the day of the breach." *Id.*; see *Kemp v. Gannett*, 50 Ill. App. 3d 429, 431 (1977) (finding a resale almost a year after the breach to be within a reasonable time); see *Sheppard v. Fagan*, 94 Ill. App. 3d 290 (1981) (using the resale price where the resale occurred approximately 10 months after the breach). Where a plaintiff demands damages, the plaintiff carries the burden of proof to show that he sustained damages resulting from the defendant's breach. *Ollivier v. Alden*, 262 Ill. App. 3d 190, 196 (1994). The plaintiff must also establish the correct measure of damages and the final computation of damages based upon that measurement. *Id.*

¶ 17    Although plaintiffs did not specifically introduce any evidence of fair market value on the date of defendant's breach, consistent with *Kemp*, plaintiffs introduced the May 2007 executed contract and the July 2007 closing statement for the sale of the property. Defendant did not contest the fact of this later sale of the property or the accuracy of the sale price. The requirement of establishing fair market value on the date of the breach relates to the proposition that a damage award should place the nonbreaching party into the position he would have been in had the contract been performed (*Kemp v. Gannett*, 50 Ill. App. 3d 429, 431 (1977)), but not in a better position. The compensation awarded in a breach of contract action should not provide plaintiff with a windfall recovery. *Bachewicz v. American National Bank & Trust Co.*, 126 Ill. App. 3d 298, 311 (1984). Damages should be based on some measurable criteria and not based on guess, speculation or conjecture. Here, plaintiff was contractually entitled to the gross sales price of $1.2 million from defendant in November 2006. There is no dispute plaintiffs sold the property eight months after defendant's breach

for a price agreed to six months after the breach. Clearly, receiving a gross sales price of $911,500 rather than $1.2 million was not a windfall. The trial court was well within its discretion in weighing this evidence and concluding the sale price between plaintiffs and 1472 Partners, Ltd., agreed to six months after the breach and confirmed eight months after the breach, established the fair market value of the property on the day of defendant's breach, November 17, 2006.

¶ 18    Defendant's contention that plaintiffs did not introduce expert testimony as to valuation of the property on the date of the breach, nor did they introduce an appraisal of the property, is not persuasive. There is no authority that supports the notion that this type of evidence is required. Likewise there is no restriction on a defendant from introducing similar evidence to refute or defeat a plaintiff's damage theory. There is no indication that the later sale was forced or fraudulent. Here, the record supports our conclusion that the award of general damages was not arbitrary, unreasonable or erroneous.

¶ 19    Defendant contends that the evidence the trier of fact should have considered in determining fair market value on the date of the breach was the price for which the property was relisted and the executed contracts during the carry period. Defendant cites no case law to support the proposition that the price at which the property was relisted or the subsequent contracts that failed are competent evidence of fair market value. Fair market value of real property is based on actual sales, where a closing has occurred, not on pending sales. *Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, ¶¶ 27-28. The subsequent contracts executed in January and March 2007, were pending sales which never closed. As pending sales, without more, these contracts cannot be considered competent evidence of fair market value on the date of defendant's breach of contract. *Id.* We find there is an adequate basis in the record to support the trial court's determination of fair market value on the date of the breach based on the July 2007 sale.

¶ 20    Defendant additionally argues that the trial court ignored other evidence which established a market value at the time of the breach lower than that ultimately accepted by the court: the owner's opinion of value, the subsequent listing price and the failed subsequent contracts. Each example advanced is burdened with an absence of context that affects the weight given to such evidence. Ginople testified on cross-examination that, in his view, the property was worth $1.2 million on the date of the breach but he also testified that he had never sold commercial property, he had very little experience in the sale of commercial property and that he and his real estate broker had difficulty in deciding on a listing price because there had not been any recent comparable properties sold in the area.

¶ 21    The trial judge, as the trier of fact, is in the "superior position to determine the credibility of the witnesses and the weight to be given their testimony." *Aetna Insurance Co. v. Amelio Brothers Meat Co.*, 182 Ill. App. 3d 863, 865 (1989). Unless the opposite conclusion is evident from the record, the reviewing court will not substitute its judgement for that of the trier of fact on matters of credibility of a witness, weight of evidence and the inferences drawn from the evidence. *Id.*; see *Best v. Best*, 223 Ill. 2d 342, 350 (2006). Here, the trial judge weighed the evidence of the July 2007 sale price and testimony from Ginople, the seller, of what he believed the property was worth and the real estate agent's testimony of offers received to purchase the property after Feinerman's breach. The trier of fact

determined the fair market value of the property at the time of the breach was the July 2007 sale price. This later sale is close in time to the date of the breach and is clearly competent evidence suitable for consideration by the trial court. We find an opposite conclusion is not clearly evident from the record.

¶ 22    Next, defendant contends that in order to consider resale price as evidence of fair market value on the date of the breach, the resale must be under circumstances comparable to the original transaction. Defendant argues that the resale between plaintiffs and 1472 Partners, Ltd., was not an arm's-length transaction and was presumptively fraudulent because it was a sale between a client and a fiduciary, and he cites to *Ball v. Kotter*, 746 F. Supp. 2d 940 (N.D. Ill. 2010), in support. *Ball* involved breach of fiduciary duty and legal malpractice claims which are inapplicable to the issues in this appeal. Here, the court heard testimony from Ginople regarding the terms of the sale with 1472 Partners, Ltd., which were negotiated by their attorneys, and his relationship with Langman throughout the course of the listing agreement and the subsequent sale to her entity. Plaintiffs' witnesses were exhaustively cross-examined on this issue. Defendant argued at length before the trial court that the later sale was suspect and that the two transactions were not comparable. The trial court patiently allowed defendant to exhaust every angle of attack and rejected the argument completely. We agree with the trial court.

¶ 23    Lastly, defendant summarily contends that the fair market value of the property eight months after the breach is irrelevant because circumstances beyond the contemplation of the parties occurred that caused the market value of the property to change. Defendant contends the unprecedented collapse of the national and local real estate market that generally occurred in 2007 was not in the contemplation of the parties. As discussed above, Illinois courts have held that a resale ten months and almost one year after the breach of contract were probative of fair market value on the date of the breach. See *Kemp v. Gannett*, 50 Ill. App. 3d 429 (1977); see *Sheppard v. Fagan*, 94 Ill. App. 3d 290 (1981). The depressed real estate market was argued and noted by the trial court. The trial court was also aware, through the testimony, that defendant was a real estate developer who sought the property in order to convert the upper floors to residential condominiums and, when he could not get financing for this purpose, he refused to complete the transaction. When the defendant signed this contract he stood to benefit from a rise in the real estate market to the seller's detriment. Defendant also knew the risk of a downturn in the market. That is the nature of real estate development. As an experienced real estate developer, defendant willingly assumed and contemplated the risk of a market downturn and risks of damages being incurred as a result of his breach.

¶ 24    Based on the foregoing, we find the trial court did not apply an erroneous measure of damages in calculating general damages. As stated above, the fair market value of a parcel of land can be defined as the price for which property would sell under ordinary circumstances, assuming that the seller is willing to sell and the buyer is under no compulsion to buy. *Department of Public Works & Buildings v. Oberlaender*, 42 Ill. 2d 410, 415 (1969); see also *Forest Preserve District v. Hahn*, 341 Ill. 599, 602 (1930); *Ligare v. Chicago, Madison & Northern R.R. Co.*, 166 Ill. 249, 261-62 (1897). The trial court considered the testimony and weighed the evidence presented at trial as to fair market value

and determined that the resale price was most probative of fair market value on the date of the defendant's breach of contract. We find the record supports the trial court's finding. Accordingly, we find that the trial court's award of general damages based on the subsequent sales price was not against the manifest weight of the evidence.

¶ 25                                II. Carry Costs

¶ 26                               A. Interest Expense

¶ 27     Defendant contends the trial court erred in awarding plaintiffs consequential damages for mortgage interest expenses paid during the carry period. Plaintiffs requested damages of $51,430 for mortgage interest paid during the carry period. The trial court, at the close of trial, awarded plaintiffs $10,000 for this expense.

¶ 28     Ginople testified that he paid mortgage interest to Lincoln Park Savings for each month of the eight-month carry period. During his testimony, Ginople could not remember the exact amounts paid each month during the carry period. Plaintiffs' counsel refreshed Ginople's recollection as to the first month. After his recollection was refreshed, Ginople testified that for the first month, he paid $6,600 in interest. For each of the following months Ginople could not recall the amount paid, his counsel would show him an unauthenticated document described as having been provided by Ginople's mortgagee to refresh his recollection. Ginople would then state the amount of the interest paid for each of the remaining months. Defendant's counsel objected to this process arguing that Ginople's memory had not been refreshed, but rather he was testifying as to the amounts read from a document shown to him by his counsel. The trial court sustained defendant's objection, and no further testimony was elicited on the matter.

¶ 29     In determining the damage amount for the mortgage interest paid during the carry period, the trial court found that plaintiffs did not proffer sufficient evidence to support an award for the total demand of $51,430 in interest expense. Rather, the trial court found credible Ginople's testimony that he paid $6,600 in interest for the first month after defendant's breach. The trial court further found that because Ginople testified interest had been paid for every month during the carry period and, although he was unable to state the exact amounts, he paid more than $6,600 in mortgage interest during the carry period. The trial court awarded plaintiffs $10,000 in consequential damages for mortgage interest paid during the carry period.

¶ 30     Defendant contends that the trial court's award for mortgage interest expense was arbitrary. Defendant urges that the trial court should have denied the plaintiffs' demand in its entirety once it determined that plaintiffs had failed to present evidence sufficient from which the trial court could determine the amount of interest paid by plaintiffs.

¶ 31     Contract damages are recoverable if they may fairly and reasonably be considered to have arisen naturally from the breach of the contract itself, or may reasonably be thought to have been in the contemplation of the parties when they made the contract. *Sheppard v. Fagan*, 94 Ill. App. 3d 290, 292 (1981); *Edward E. Gillen Co. v. City of Lake Forest*, 221 Ill. App. 3d 5, 12 (1991). A party seeking to recover damages has the burden of establishing not only that he or she sustained damages, but also of providing a reasonable basis for computation

of those damages. *Lempa v. Finkel*, 278 Ill. App. 3d 417, 430-31 (1996). It is well recognized that consequential damages are recoverable by an injured plaintiff from a breach of contract where the damages were within the contemplation of the parties at the time they entered into the contract. *Pelz v. Streator National Bank*, 145 Ill. App. 3d 946, 956 (1986); see *Foster Enterprises, Inc. v. Germania Federal Savings & Loan Ass'n*, 97 Ill. App. 3d 22, 32 (1981); see *Sheppard*, 94 Ill. App. 3d at 292. The trial judge, as fact finder, is entitled to draw reasonable inferences from the testimony and evidence presented at trial. *County of Cook v. Industrial Comm'n*, 69 Ill. 2d 10, 19 (1977). We will not disregard those inferences merely because other inferences could have been drawn. *Id.* (citing *Beloit Foundry v. Industrial Comm'n*, 62 Ill. 2d 535, 538-39 (1976)).

¶ 32     We find the trial court did not err in awarding $10,000 in consequential damages for mortgage interest expenses during the carry period. The trial court heard testimony from Ginople as to the fact of the payments and the amount paid for the first month. The trial court found Ginople's testimony that he had paid interest in some amount greater than $6,600 to Lincoln Park Savings to be credible. The trial court heard and sustained defendant's objection to Ginople's testimony as to the other amounts of interest paid during the subsequent months of the carry period. Defendant did not offer any evidence to contradict Ginople's testimony that he paid interest each month of the carry period. Likewise, defendant did not offer any evidence to contradict the testimony that Ginople paid $6,600 in interest in the first month. Defendant merely argues that plaintiffs did not introduce any documentary evidence of interest paid at trial. Defendant cites no case law requiring a plaintiff to produce documentary evidence to prove its damages. Nor does defendant cite any case law forbidding a trial court to base its damage award on a plaintiff's testimony at trial.

¶ 33     The only case that defendant cites to support the proposition that the trial court's award was arbitrary is *Doornbos Heating & Air Conditioning, Inc. v. James D. Schlenker, M.D., S.C.*, 403 Ill. App. 3d 468 (2010). However, *Doornbos* supports the proposition that "mathematical exactitude" as plaintiffs argue, is not required. Rather, a plaintiff need only present evidence that tends to show a basis with which to compute the damages with a fair degree of probability. *Id.* at 485. The court allowed Ginople's testimony regarding the first month's payment of $6,600. The court found credible Ginople's testimony that interest was paid every month during the carry period. The court did not accept the argument that he paid $51,430, finding a specific amount was not proven to the court's satisfaction. Other evidence showed the property had a mortgage in excess of $732,000 during the relevant period. Clearly, plaintiffs' counsel did not present conclusive evidence on this relatively routine matter of proof and is fortunate trial courts are given latitude in this regard. Defendant does not argue that no interest was paid. That stated, the trial court's award of $10,000 for mortgage interest paid on a $732,000 mortgage over an eight-month period is not unreasonable or against the manifest weight of the evidence.

¶ 34                                    B. Real Estate Tax Expense

¶ 35     Lastly, defendant appeals from the trial court's final judgment of $4,618 in favor of plaintiffs for the real estate taxes paid from the time of defendant's breach to the eventual

sale eight months later. At trial, plaintiffs requested $10,779.17 in damages for real estate taxes incurred during the carry period. At the end of trial, the court found plaintiffs were entitled to damages on this issue but did not reach a conclusion on the amount of taxes to include in the judgment. The trial court continued the proceeding for the calculation and entry of a tax damage award and indicated a need to review the evidence.

¶ 36　The evidence showed Ginople paid real estate taxes on the property totaling $10,779.17 for the year 2007. Further, Ms. Laiss, the plaintiffs' attorney, testified regarding the real estate tax prorations contained in the closing statement she prepared for the failed closing with defendant which showed plaintiffs' 2006 tax liability as $4,618.44. The trial court found Ms. Laiss to be credible and admitted the closing statement into evidence. The HUD-1 settlement statement used in the real estate transaction between plaintiffs and 1472 Partners, Ltd., was also admitted into evidence. That statement showed real estate taxes incurred from January 1, 2007, to July 30, 2007, the date of closing, were $10,779.17.

¶ 37　Posttrial, plaintiffs presented further submissions showing the amount of taxes paid, including a calculation showing taxes incurred during the carry period as $23,457.40. The trial court accepted this calculation and awarded $23,457.40 to plaintiffs for the taxes incurred. Defendant then filed a motion for reconsideration of, among other things, the real estate tax award, arguing it was erroneous and should not have been based on the posttrial submission of plaintiffs. The trial court agreed and found that it had relied on improper evidence presented at the posttrial hearing. The trial court then reduced the real estate tax damage award to $4,618 based on Ms. Laiss's testimony at trial and the closing statement prepared by Ms. Laiss that was admitted into evidence.

¶ 38　The crux of defendant's argument is that the trial court erred in awarding any monetary judgment in favor of plaintiffs for the real estate taxes incurred because plaintiffs failed to meet their burden of proof. Specifically, defendant argues the trial court erred by awarding $4,618 in damages for the taxes because that figure was "totally divorced from any evidence." Defendant argues the trial court erred because plaintiffs did not produce a certified or otherwise authenticated copy of the tax bill or a cancelled check to show the bill was paid. Similarly, as discussed above, defendant does not cite to any authority to support its contention that, absent documentary proof, the evidence presented by plaintiffs at trial was insufficient to sustain a damage award for real estate taxes during the carry period.

¶ 39　We find plaintiffs did provide both testamentary and documentary evidence of taxes paid during the carry period to support this part of the damage award. As discussed above, this court will not disregard inferences made by a trial court merely because other inferences could have been drawn. *County of Cook v. Industrial Comm'n*, 69 Ill. 2d at 19; see *Gonet v. Chicago & North Western Transportation Co.*, 195 Ill. App. 3d 766, 776 (1990) (stating "[i]t is the trial court's prerogative to draw reasonable inferences and ultimate conclusions from the evidence [citation], and its judgment will not be disturbed because another trier of fact could have found differently or found reasonable other conclusions"); see also *P.A.M. Transport, Inc. v. Builders Transport, Inc.*, 209 Ill. App. 3d 889, 892 (1991) (stating that under the manifest weight standard "where several reasonable inferences based upon the evidence are possible, the inference drawn by the fact finder must prevail").

¶ 40    The trial court, in awarding damages for the payment of real estate taxes during the carry period, relied on documentary evidence, a HUD-1 closing statement, and testimony from the plaintiffs' real estate attorney. The trial court reasoned that, "[i]f the testimony at trial–even in reference to a HUD document that was admitted into evidence and without objection, that would be leaving it up to the court to be able to read, understand, and interpret the HUD document." The trial court evaluated the evidence and based its damage award on the documents admitted into evidence and supporting oral testimony. The determination that the owner of a building located in Chicago that had a market value in excess of $911,000 incurred a real estate tax liability of $4,618 during an eight-month period in 2007 is clearly reasonable. Therefore, we cannot say that the trial court ignored the evidence, or that its measure of damages was erroneous as a matter of law. Rather, defendant failed to demonstrate that the trial court's findings of fact and damage award were against the manifest weight of the evidence.

¶ 41                                  CONCLUSION

¶ 42    For the foregoing reasons, we find the trial court's awards of general damages based on the subsequent sale price and consequential damages for mortgage interest payments and real estate taxes paid during the carry period were not against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Cook County is affirmed.

¶ 43    Affirmed.